UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 07 CR 815-6 |
| | ) | Judge Rebecca R. Pallmeyer |
| MURTEZA GAZAFERI | ) | |

**GOVERNMENT'S RESPONSE TO GAZAFERI'S MOTION FOR
MODIFICATION OF PROBATION**

The UNITED STATES OF AMERICA, by its attorney, PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, hereby responds to defendant Murteza Gazaferi's Motion for Modification of Probation as follows.

**A.    Overview of Facts**

Murteza Gazaferi and his business partner, Ahmet Rusid, agreed to pay kickbacks to John Schwab, an official of the Village of Bolingbrook. In the course of the scheme, which lasted nearly two years, Gazaferi created and submitted phony invoices to the Village. He and Rusid used the Village's payments on these false invoices not only to pay the kickbacks to Schwab, but also *to take money for themselves and their business*. Of the approximately $30,000 that Gazaferi and Rusid stole from the taxpayers of Bolingbrook through the submission of false invoices, they kept for themselves **80%** – or $24,000.

Months after Schwab was fired from the Village for his criminal activities, Schwab had a conversation with both Gazaferi and Rusid, both of whom assured Schwab that, if they were questioned by law enforcement authorities, they would deny the kickback scheme. And, in fact, when FBI agents later approached Gazaferi and asked him about his relationship with Schwab, he lied to the agents and denied any payments to Schwab and the kickback scheme.

Gazaferi later came to the federal authorities and truthfully explained his participation in the scheme, expressing sincere remorse. He then pled guilty to one count of honest services fraud and made restitution of $15,000 at the time of his plea. (Under 18 U.S.C. § 3663A, restitution for this crime is mandatory.)

At sentencing, although the range applicable under the advisory Sentencing Guidelines was 24 to 30 months, the Court sentenced Gazaferi to three years probation, with the condition that he spend six months in community confinement and six months in home confinement.

### B.   The Pending Motion

In his motion, Gazaferi asks the Court to modify the terms of probation to eliminate the condition that he spend six months in community confinement. Instead, Gazaferi tells the Court that "it would be suitable for the Defendant to be placed on electronic monitoring instead for the first six months, or quite frankly, no electronic monitoring at all." Mot. at 2. Gazaferi informs the Court that the assigned Probation Officer "feels that the Defendant should not have to participate in community confinement for the hardship created regarding his struggling business in Joliet, Illinois." Id. at 1. He further tells the Court that "[h]e travels from 105 S. Ashland, the site of the Salvation Army where Defendant is currently staying, to Joliet, Illinois and the total travel time is 1½ hours, each way." Id. at 1-2.

### C.   Argument

The government strongly opposes this motion. This Court was more than generous to Gazaferi when it departed from the advisory Sentencing Guidelines and, instead of requiring Gazaferi to serve at least two years in jail, as the advisory Guidelines provided, gave him no jail time, thus allowing him to continue working at the business that he chose to open just three

weeks before his sentencing date. Obviously, if the Court had sentenced Gazaferi to a sentence within the guideline range, he would have had no such opportunity to work at the business. The fact that he must travel 1½ hours each way to arrive at his business is hardly a "hardship"; such a commute is an everyday event for tens of thousands of people who reside and work in the Chicago metropolitan area, many of whom have never committed felony crimes of corruption of local government officials. (For example, the train ride from Joliet to downtown Chicago, a commute on Metra's Rock Island District Line that is traveled by thousands of people every workday, is, by itself, one hour and 27 minutes.)

Further, according to the PSR, the business that Gazaferi recently opened is an auto repair business that is owned and operated by Gazaferi and a partner and that has one employee. Thus, there are others involved in the business who can certainly assist while Gazaferi engages in a normal commute for six months.

Finally, while there were factors in mitigation that were raised at Gazaferi's sentencing, such as the lack of prior criminal history, his remorse, and the fact that he participated in the kickback scheme only after being solicited by Schwab, it is equally relevant that he and his partner did not just pay Schwab kickbacks – they kept for themselves **80%** of the money they received through falsely invoicing the Village. Gazaferi chose to participate in a serious crime – the corruption of a public official and the selfish defrauding of local government – which tears at the heart of the community. It is the government's view that the advisory guideline ranges for such crimes are significant for a very simple reason – there must be serious sentences for serious crimes. As it is, the sentence that Gazaferi received was far below the guideline range. Now Gazaferi essentially asks this Court to remove any possible hardship that he may have to endure

3

as a result of his crime. To grant his motion will not simply fail to deter future crimes of this type; it will actually *encourage* them. In this case, a businessman decided that he could not afford to lose government business and therefore agreed, for a period of nearly two years, to pay kickbacks to a government official using government money received by submitting false invoices, of which money he and his business partner took the lion's share for themselves. If the consequence of such activity is not only a probationary sentence far below the guideline range, but also the removal of any possible hardship resulting from any of the conditions of probation, then the clear message to all business owners in the community will be that participating in advantageous economic arrangements involving kickbacks to local public officials and fraud on local government is definitely worth the risk.

### D.    Conclusion

For the foregoing reasons, the government respectfully requests that this Court deny Gazaferi's Motion for Modification of Probation.

>
> Respectfully submitted,
>
> **PATRICK J. FITZGERALD**
> United States Attorney
>
> By:    s/Laurie J. Barsella
> **LAURIE J. BARSELLA**
> **STEVEN BLOCK**
> Assistant U.S. Attorneys
> 219 S. Dearborn Street
> Chicago, Illinois  60604
> (312) 353-6069

**CERTIFICATE OF SERVICE**

The undersigned Assistant United States Attorney hereby certifies that in accordance with Fed. R. Crim. P. 49, Fed. R. Crim. P. 5, LR 5.5, and the General Order on Electronic Case Filing (ECF), the following document:

**GOVERNMENT'S RESPONSE TO GAZAFERI'S MOTION FOR MODIFICATION OF PROBATION**

was served pursuant to the district court's ECF system as to ECF filers, if any, and were sent via facsimile on July 18, 2008, to the following:

>Ralph Meczyk
>Attorney at Law
>111 W. Washington
>Suite 1025
>Chicago, IL 60602
>[FAX 312:427-3777]

>  s/Laurie J. Barsella
>**LAURIE J. BARSELLA**
>**STEVEN BLOCK**
>Assistant U.S. Attorneys
>U.S. Attorney's Office
>219 S. Dearborn Street
>Chicago, Illinois  60604
>(312) 353-6069